# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON

**WALTER LEE MOTLEY,**

      **Plaintiff,**

v.                                                        **CASE NO. 2:11-cv-00017**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. Both parties have consented in writing to a decision by the United States Magistrate Judge. Plaintiff is *pro se* and did not file a brief in support of his complaint. Defendant did file a brief in support of Defendant's decision. (ECF No. 16.)

Plaintiff, Walter Lee Motley (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on September 13, 2007, alleging disability as of January 1, 2006, due to carpal tunnel syndrome and hearing loss.[1] (Tr. at 13, 111-13, 118-20, 123-25, 128-131, 160-67, 168-73, 174-78.) The claims were denied initially and upon reconsideration. (Tr. at 13,

---

[1] On August 11, 2000, Claimant filed an application for a period of disability and DIB, alleging disability beginning October 1, 1978. The claim was denied on October 19, 2000, and Claimant did not appeal the determination. On January 25, 2006, Claimant filed an application for a period of disability and DIB, alleging disability beginning January 9, 2006. The claim was denied on April 18, 2006, and Claimant did not appeal the determination. On August 21, 2007, Claimant filed applications for a period of disability, DIB and SSI, alleging disability beginning January 9, 2006. The claim was denied on August 28, 2007, and Claimant did not appeal the determinations. (Tr. at 13.)

40-44, 46-50, 51-56, 65-67, 68-70.)  On June 30, 2008, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 71-74.)  The hearing, at which time Claimant was represented by counsel, was held on December 10, 2008 before the Honorable Toby J. Buel, Sr.  (Tr. at 18-29, 82.)  By decision dated January 22, 2009, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 13-17.)  The ALJ's decision became the final decision of the Commissioner on November 12, 2010, when the Appeals Council denied Claimant's request for review.  (Tr. at 1-9, 232-33.)  On January 6, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the

claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant did not satisfy the first inquiry because he has engaged in substantial gainful activity since the alleged onset date. (Tr. at 15-16.) The ALJ determined there has been no continuous 12-month period during which Claimant has not engaged in substantial gainful activity. (Tr. at 16.) On this basis, benefits were denied. (Tr. at 16.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a

> preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 50 years old at the time of the administrative hearing. (Tr. at 111.) He has a twelfth-grade education. (Tr. at 166, 313.) In the past, he worked as a janitor, dishwasher, and dietary aide providing food trays for hospital patients. (Tr. at 23, 162, 182, 313.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Physical Evidence

On October 10, 2000, Gary D. Harris, Ph.D., audiologist, performed a hearing evaluation of Claimant. He concluded:

> The audiogram shows a moderately severe sensorineural hearing loss
> bilaterally. The average hearing levels for 500, 1000 and 2000 Hz are 55 (R)
> and 63 (L) dB. The speech discrimination scores are 64% (R) at 85 dB, and

> 36% (L) at 85 dB....
>
> Without a hearing aid, he mostly relies on lipreading. I would expect him to have great difficulty with any task that involves communication. This is a permanent hearing loss.

(Tr. 237.)

Records from Charleston Area Medical Center ["CAMC"] Emergency Department indicate Claimant was treated on six occasions for right and left wrist pain between January 14, 2006 and June 13, 2007. (Tr. 245-68.) On June 13, 2007, William N. Payne diagnosed "probable carpal tunnel syndrome." (Tr. 266.)

On February 21, 2006, Dr. Harris performed a hearing evaluation of Claimant. He reported: "Mr. Motley reports impaired hearing since childhood. He has worn hearing aids and benefitted from them, but doesn't have any now and can't afford to purchase them....Mr. Motley has a moderately-severe, long-standing, sensorineural hearing loss bilaterally. Today's results are reasonably similar to those from 2000." (Tr. at 234.)

On March 29, 2006, Nilima Bhirud, M.D. examined Claimant and provided a Disability Determination Evaluation for the West Virginia Disability Determination Service. (Tr. 239-44.) Dr. Bhirud concluded: "The claimant...injured his right wrist at work. He was referred to a specialist in Morgantown. The claimant cannot afford to go there. His grip in the right hand was almost normal. He has tenderness over the right wrist and there was decreased range of motion." (Tr. 241-42.)

Claimant was a patient at CAMC Clinic on June 20, 2007, July 11, 2007, July 18, 2007, August 1, 2007, and November 7, 2007 for follow-up regarding his wrist pain. (Tr. 272-82, 303-09.) Although the handwritten notes are largely illegible, an entry dated July 20, 2007 states: "Pt [patient] has reactive syphilis test (RPR). I called pt to inform him to

return to clinic...No answer." (Tr. 276.) A note dated August 1, 2007 states "gout / carpal tunnel." (Tr. 303.)

On December 3, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with all postural limitations being able to be performed frequently save for climbing ladder/rope/scaffolds and crawling which could be done occasionally. (Tr. 285.) No manipulative or visual limitations were established. (Tr. 286.) Claimant's hearing communication was "limited" and his speaking communication "unlimited." (Tr. 287.) Environmental limitations were unlimited save to avoid concentrated exposure to noise, vibration and hazards. Id. Claimant's primary diagnosis was "sensorineural hearing loss" and his secondary diagnosis "pain and swelling left wrist, cause UK [unknown]." (Tr. 283.) The evaluator, A. Rafael Gomez, M.D. concluded:

> Patient is not fully credible. His allegations are out of proportion to the medical findings. There is not a diagnosis of CTS as alleged. Has pain and swelling of the left wrist with negative x-rays. The nature of the swelling and pain was not diagnosed. Has S-N hearing loss with SD of 64% left ear and 85% right ear corrected by hearing aids. He is reduced to medium work.

(Tr. at 288.)

On May 8, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with no postural, manipulative, visual, or communicative limitations. (Tr. 292-95.) Environmental limitations were unlimited save to avoid concentrated exposure to extreme cold and vibration. (Tr. 295.) Claimant's primary diagnosis was "gout affecting wrists" and his secondary diagnosis "hearing loss / aids." (Tr. 291.) The evaluator, James Egnor, M.D. concluded:

> He has gout affecting the left wrist, symptoms improved with meds (follow up 11/07) with decreased swelling in wrist, symptoms are intermittent as is typical of gout attacks, repeated exams have found no neuro/motor loss; his statement of being able to lift only 5# is not fully credible, and the RFC is reduced to do only medium level work with some limitations in the left hand exertion; he has hearing loss but does well with aids - no further reduction in the RFC warranted.

(Tr. at 298.)

On November 7, 2008, Health Plus Family Care reported that Claimant was a new patient with "R [right] hand/wrist swollen...prob. [probably] gout." (Tr. at 302, 310.)

Psychiatric Evidence

On November 20, 2008, John Atkinson, Jr. M.A., licensed psychologist, completed a clinical interview, mental status examination and testing of Claimant. (Tr. at 311-21.) Mr. Atkinson concluded:

> In summary, we see here a 50-year-old male, mentally retarded and semi-literate, who has a great deal of difficulty conceptualizing and expressing his feelings and in communication with others. He complains of chronic pain and doctors' reports are somewhat conflicting: one stating that the patient injured his wrist and the other one stating that he has gout. Apparently, he was also told by someone that he had carpal tunnel. The patient is alexithymic, does not really know what his emotions and feelings are but denies depression, anxiety, etc. It is felt that if he cannot return to physical type work involving the use of his hands, that he cannot be retrained for anything else due to his mental deficiency.
>
> DIAGNOSIS:
> Axis I.     R/O 307.89  Pain Disorder with both Psychological Factors and a General Medical Condition
> Axis II.    317.        Mild Mental Retardation
> Axis III.               See Medical Reports
> Axis IV.                Health Problems
> Axis V.                 GAF=55, Moderate to Serious Impairment, Current and Past Year
>
> RATIONALE:
> R/O 307.89  Manifested by preoccupations with pain levels which may be in excess of physical findings but this is unclear based upon his

7

     medical reports.
317.  Manifested by valid WAIS-III Verbal IQ 62, Performance IQ 70, Full Scale IQ 63, grade school reading and math.

PROGNOSIS: Uncertain.

CAPABILITY: If benefits are granted, the patient should be given a try at managing his own financial affairs as he has done so in the past.

(Tr. at 316-17.)

On November 20, 2008, Mr. Atkinson completed a form titled: "Mental Assessment of Ability to do Work-related Activities." (Tr. at 319-21.) Regarding "Making Occupational Adjustments", he checked "marked" limitation in the areas of "deal with the public" and "maintain attention/concentration"; "moderate" limitation regarding "relate to co-workers", "use judgment", and "function independently;" and "slight" limitations in the areas of "follow work rules, interact with supervisors, and deal with work stresses." (Tr. at 320.) Regarding "Making Performance Adjustments", he marked "extreme" limitations in the areas of "[u]nderstand, remember and carry out complex job instructions...(and) detailed but not complex job instructions" and "moderate" limitations regarding the ability to "[u]nderstand, remember and carry out simple job instructions." Id. He noted Claimant's full scale IQ to be "63" and stated that he was "semi-illiterate." Id. He concluded that Claimant was able to maintain his personal appearance but would have "slight" adjustment difficulty in the areas of "[b]ehave in an emotionally stable manner; [r]elate predicably in social situations, [and] [d]emonstrates reliability." (Tr. at 321.)

Analysis

The undersigned, after a thorough review of the evidence of record, finds that the ALJ's decision dated January 22, 2009, is supported by substantial evidence. In his

decision, the ALJ determined that Claimant has engaged in substantial gainful activity since May 1, 2006 and that there has been no continuous twelve-month period during which Claimant has not engaged in substantial gainful activity . (Tr. at 15-16.) The ALJ concluded that Claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of the ALJ decision, January 22, 2009:

> The claimant testified that he left his job at the Embassy Suites and started working at Charleston Area Medical Center because he was unable to perform the required lifting at Embassy Suites. The job was easier; however, he continues to have problems with carpal tunnel syndrome.
>
> The record indicates the claimant has worked as a dishwasher at Charleston Area Medical Center since May 2006. In August 2007, his hours were reduced to part-time (Exhibit 7E). His earnings for the period May 1, 2006, through December 31, 2006, totaled $7,557.16, which indicates he earned $944.65 per month. The monthly earnings normally considered substantial gainful activity for 2006 is $860.00. His earnings for the year of 2007 were $11, 333.47, which indicates monthly earnings of $944.62. This monthly amount is greater than the amount of $900, which is normally considered substantial gainful activity for 2007. His earnings for the period January 1, 2008, through March 31, 2008, were $3,174.00, which indicates monthly earnings of $1,058.00; the period April 1, 2008, through June 30, 2008, were $2,998.00, which indicates monthly earnings of 999.34; and the period July 1, 2008, through September 30, 2008, were $3,366.00, which indicates monthly earnings of $1,122.00. These monthly amounts are greater than the amount of $940, which is normally considered substantial gainful activity for 2008 (Exhibit 9D). It is extremely rare to see someone with significant limitations earning above the substantial gainful activity level. If the claimant's conditions reach the point that he is not able to work he may reapply.
>
> Judith Brendemuehl, M.D., a medical expert, testified the claimant has a hand condition and has been diagnosed with sensory neuropathy in both upper extremities. The record indicates flare-ups of his condition with a mention of gouty arthritis. The claimant has multiple diagnoses; however, his x-rays are normal.
>
> There is no evidence of the claimant requiring special work conditions in order to perform his duties. Therefore, his work activity is found to be substantial gainful activity under the law.

<u>Id</u>.

Substantial evidence supports the ALJ's finding that Claimant was not disabled as defined under the Social Security Act. The Act defines disability as an inability to work because of a medically determinable physical or mental impairment which can be expected to result in death or which lasts for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). It is Claimant's burden to provide evidence of disability. <u>Blalock v. Richardson</u>, 484 F.2d 773, 775 ($th Cir. 1972); 20 C.F.R. §§ 404.1512, 416.912. The claimant bears the burden at step one of showing that he is not performing substantial gainful activity. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987). Here, the ALJ determined, at step one of the sequential evaluation process, based on Claimant's testimony and his earnings for 2006 through 2008, that Claimant was not disabled because he was engaged in substantial gainful activity. Therefore, further evaluation was not required.

The Commissioner argues:

> Although it is not clear from the record how the ALJ arrived at the amount of Plaintiff's 2008 third quarter earnings...other substantial evidence in the record supports a finding that Plaintiff engaged in substantial gainful activity in 2008 (Tr. 16, 25, 136, 138, 230-31). More importantly, even if Plaintiff had not worked during the third quarter of 2008, the result in this case would be the same because Plaintiff's ability to work two out of four quarters in 2008 does not comport with the Act's strict duration requirements. In order to be found disabled under the act, a claimant must have an impairment that lasts for at least twelve months....Given Plaintiff's partial earnings in 2008, the ALJ properly found that there had been no continuous twelve-month period during which Plaintiff had not engaged in substantial gainful activity (Tr. 16, Finding No. 3). Therefore, because Plaintiff's average monthly earnings show that he had engaged in substantial gainful activity during the relevant period, and there was no twelve-month period during which he had not engaged in substantial gainful activity, the ALJ reasonably determined that he was not disabled under the Act at step one in the sequential evaluation process.

(Def.'s Br. at 7-9.)

The undersigned finds that the ALJ derived his findings regarding Plaintiff's 2008 third quarter earnings from records collected and discussed during Claimant's testimony at the December 10, 2008 hearing, wherein Claimant directly provided to the ALJ his pay statements from Charleston Area Medical Center for November 21, 2008 and December 5, 2008. (Tr. at 25.) After a careful consideration of the evidence of record, the court finds that the Commissioner's decision that Claimant was not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of the ALJ's decision, is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to transmit copies of this Memorandum Opinion to the *pro se* Claimant and counsel of record.

ENTER: December 16, 2011

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge